JOVITA HERNÁNDEZ WIDOW OF SAMBOLÍN ET AL., Appellants, v. THE REGISTRAR OF PROPERTY OF PUERTO RICO, SAN GERMÁN SECTION, Respondent.

No. G-66-4.    Decided April 20, 1967.

304

*Francisco Parra Toro, Waldemar del Valle López,* and *Carlos M. Franco Soto* for appellants. The respondent Registrar appeared by brief.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Appellants are the heirs and legatees of the estate of Santiago Sambolín Becchi, who died testate on September 14, 1959, without leaving in his succession any forced heirs except his wife as to the portion in usufruct established by law—Civil Code, 1930 ed., § 736. In his will he made certain bequests in favor of his wife and other persons, and in the remainder of all his estate and rights, he instituted as his sole and universal heirs, his wife Jovita Hernández, and his aforementioned nephews and nieces, eight in all, in a proportion of 50% of said estate and rights for his wife and the remaining 50% for his nephews and nieces in the proportion specified in the will.

In making the distribution of the inheritance estate its value was assessed at $606,899.19, excluding the community property of the surviving spouse. In said partition $177,140 were left to the widow in fee simple as legatee and also the amount of $182,924.59 as universal heir, according to the will, amounting to $360,064.59 in fee simple. The amount of $246,834.60 was left to the other heirs in fee simple as the universal heirs and legatees.

The adjudication of the hereditary estate having been made for the payment of their respective shares to the heirs and legatees, who are all of the above entitled appellants, and the partition deed having been presented to the Registry of Property, the Registrar recorded the real properties adjudicated to the nephews and nieces numbering eight, and the two legatees "without prejudice to the right of the usufructuary quota corresponding to the widow, Jovita Hernández." The nephews and nieces and appellant legatees, among them the widow, Jovita Hernández, maintain that the Registrar erred in recording the properties adjudicated to them subject to the right of the usufructuary quota corresponding to the surviving spouse, and request—including

the widow—that we order the registration of the properties free from said right of usufruct.

In the partition deed the heirs stated the following:

*"Explanation Concerning the Usufructuary Quota:*

"The appearing parties hereby state that in the will copied in this deed, Santiago Sambolín Becchi did not provide for the usufructuary right in favor of his surviving spouse, the appearing party, JOVITA HERNÁNDEZ, WIDOW OF SAMBOLÍN; and the provisions of section seven hundred sixty-four (764) of the Civil Code of Puerto Rico, equivalent to section two thousand four hundred fourteen (2414) of Title Thirty-one (31) of the Laws of Puerto Rico Annotated which establishes that where the testator should leave neither legitimate ascendants nor descendants, as in the present case, the surviving spouse shall be entitled to one half (1/2) of the estate in usufruct, have been complied with inasmuch as said surviving spouse has been instituted heir in fee simple of an equal amount, that is, fifty percent (50%) of the estate, and this hereditary portion has covered and paid the half which corresponds to her in usufruct. By virtue of the foregoing, the inheritance property to which this deed refers is not subject to the payment of the usufructuary quota, which by law corresponds to the surviving spouse, and consequently, the appearing parties request the corresponding Registrars of Property not to enter any mention, as to the real property described in this deed, of said usufructuary quota in favor of the surviving widow."

Applicable premises of law in this case are: § 764 of the Civil Code, 1930 ed., which provides that where the testator should leave neither legitimate ascendants nor descendants—in this case he did not leave any ascendant or descendant—the surviving spouse shall be entitled to one half of the estate in usufruct. Section 765 establishes the manner in which the heirs may satisfy the surviving spouse for his or her part of usufruct; and provides in its second sentence that until this has been done, all the property of the inheritance shall be charged with the payment of the part of the usufruct pertaining to the surviving spouse.

Hence, the reserve of usufruct which, according to his position in this case, the Registrar made in recording the properties of the other heirs. We have said that the usufructuary quota is the legal portion of the surviving spouse, *Luce & Co. v. Cianchini*, 76 P.R.R. 155 (1954), inasmuch as according to § 735 of the Code itself, the legal portion is that part of the property which the testator cannot dispose of because the law has reserved it for specified heirs, called on that account forced heirs; and pursuant to § 736 the widower or widow is a forced heir as to the right to a portion in usufruct established by §§ 761, 762, 763, and 764 mentioned above, which governs in this case.

■ Section 746 of the Civil Code provides that in order to determine the legal portion, which in this case is but the usufruct reserved by law for the widow, the value of the property remaining upon the death of the testator, after deducting all debts and charges, without including therein those imposed in the will, shall be taken into consideration. Pursuant to this section and there being a net hereditary estate amounting to $606,899.19, the widow is entitled by law to the amount of $303,449.60, in usufruct by reason of her legal portion. The widow received as heir, and as legatee, the amount of $360,064.59 in fee simple.

■ The position of the Registrar is that regardless of the amount the testator left to his widow in fee simple, in this case in excess of one half of the estate, the widow is still entitled also to half the inheritance in usufruct. Appellants' position, including the widow herself, is that the testator having left to her more than half the estate in fee simple, and not merely as usufruct, there was no violation of § 764, or the provisions as to the legal portion of the widow as forced heir.

Section 743 establishes that the forced heir to whom the testator has left, *for any reason whatsoever*, less than the

legal portion due him may demand the fulfillment thereof. In view of the facts set forth, we do not see how the widow, if her position were different, could successfully invoke the provision in this section and demand the fulfillment of her legal portion on the ground that the testator left her less than the legal portion which the law reserves for her. The position of the Registrar, if it were sustained, would lead to a construction and scope of § 735 which would be attributing to the legal portion, and to § 764 a meaning which they actually do not have.

█ Section 735 must be read together with § 692 which is the preamble of the institution of heirship. This section provides that a person who has no forced heirs, *may dispose* by will of all his property in favor of any person qualified to acquire it, but that the person having forced heirs, *may dispose* of his property *only* in the manner and with the limitations established by the Code. It may be seen, then, that § 692 and § 735 are at law limitations to the full freedom to dispose, to the *jus disponendi* of the testator, who must observe, within his freedom to dispose, certain minimum rights which the State guarantees to specified persons whom it declares heirs by force of law.[1]

As to the surviving spouse in particular Santamaría says —*op. cit.* in footnote—at page 796:

"The widower or widow shall succeed to all the property of his or her spouse by quota or aliquot part in usufruct or as universal successor or heir, properly speaking, who assume all the rights and obligations of 'de cujus' in the testate succession

---

[1] Santamaría says: "The legal portion means a limitation of the principle of the freedom to dispose sanctioned by § 763 [692 ours].

"The rules of succession of the legal heirs—Messineo says (III, 2a, 197)—are rules of public order, and therefore, of *'jus cogens'* or unrepealable; but at the same time they should be strictly construed because they are in contravention of the freedom to dispose." I *Comentarios al Código Civil* 795 (1958).

as well as in the case provided in § 952 for the intestate.
(J. of June 9, 1949)."[2]

Referring then to the "inviolability of the legal portion"
commenting on § 813 of the Spanish Code, equivalent to
§ 741 of ours which provides that a testator cannot deprive
the heir of his legal portion, except in the cases expressly
fixed by law, Santamaría says that "the principle of the
inviolability of the legal portion which this section proclaims
is a result of what § 763 establishes in its second para-
graph." (P. 805.) Section 763 corresponds to § 692 of our
Code, and we have already said that this is but a limitation
of the testator's freedom to dispose.

As to the violation of the legal portion and the action to
demand the fulfillment thereof—§ 743 of 1930 ed., equivalent
to § 815 of the Spanish Code—the author also states: (p. 808)

"The action in favor of the heir by force of law originating
in this provision is the one formerly known by the names of
*'expletory'* or *'ad suplementum'*, which action, as Castán states,
(IV, 6th ed. 581) summarizing the opinion of Manresa and
Valverde, is recognized by the majority of the commentators
as partaking of a real nature.

"This section [§ 743, 1930 ed.] is applicable whenever an
*heir by force of law* has been instituted by the testator *either
as universal successor or as singular successor* to a hereditary
portion, *less than the legal portion due him* pursuant to the
provisions of § 818 [§ 746 ours] but whenever there is no
testamentary provision whatsoever in his favor § 814 [§ 742]
governs and not this one."[3]

---

[2] The judgment of the Supreme Court of Spain, of June 9, 1949
states: ". . . pursuant to the provisions of §§ 763, 807 (number 3.°),
834 to 837, and 952 of the Civil Code, the widower or widow shall have
a right to a portion or aliquot part in usufruct of his or her spouse's
estate, which vest them with the nature of heirs 'sui generis' similar to
that of creditor or legatee 'ex-lege' who are not liable for the predecessor's
debts, and may also succeed in the estate as universal successors or heirs
properly speaking who assume all the rights and obligations of 'de
cujus' . . . ."

[3] See Judgments of the Supreme Court of Spain of May 6, 1891;
January 28, 1919; June 24, 1927; May 22, 1950; January 19, 1950.

So far, and as an irrevocable question of public order as is the legal portion reserved by law against the testator's absolute *jus disponendi*, there is no omission of the rights of the surviving spouse in this case, nor is there an inferior *quantum* of the portion which by law corresponds to her. Section 743.

■ The preceding conclusion notwithstanding, we must bear in mind that the will of the testator is the law in the succession. Let us see whether in conformance with Santiago Sambolín Becchi's will the Registrar is right on this other consideration. We said that he bequeathed to his widow specific legacies in fee simple for the amount of $177,140. Castán remarks that pursuant to § 660 of the Spanish Code —equivalent to our § 609, 1930 ed.—which defines legatee as one succeeding under a special title, "it is inferred that the legacy is, for the Code, a manner of succession *mortis causa* under special title, that is as to the property and private rights of a person.[4] He left to her the absolute ownership of half of the remainder of the inheritance after the legacies, amounting to $182,924.59, making a total of $360,064.59 in fee simple, $56,614.99 in excess of half of the whole estate. The point is whether it was the intention of the testator to leave also to the widow the usufruct on the remaining $246,834.60 which were left to the other heirs.

When the testator instituted as sole and universal heirs his wife, Jovita Hernández, in a proportion of 50% of all his estate and rights after the legacies, and his nephews and nieces in the remaining 50%, at no time did he mention the usufruct neither to qualify his bequest to the surviving spouse limiting her participation, nor to qualify either, his bequest to the other heirs limiting the latter's.

---

[4] 4 *Derecho Civil Español, Común y Foral* 583 (6th ed. 1944). It is definitively established in the doctrine that the widower has the quality of being heir or successor of his spouse. *Id.* at 541.

If we consider that he left to his widow much in excess of her legal portion, in the absence of an intention more clearly expressed we do not believe that he had the intention to charge the inheritance of his nephews and nieces with the widow's right to usufruct. The Supreme Court of Spain decided in its judgment of June 3, 1947 that it cannot be deduced that what has been left by the testator as a legacy in favor of a forced heir should be computed *always* to his legal portion. This decision stems from the following facts:

It was an action brought by an heir against the widow to declare that a legacy in favor of the widow should be charged against her legal portion. It dealt with a will in which the deceased bequeathed to his wife certain specific property on condition that if she remarried the legacy would be ineffective, the property bequeathed passing then to an heir. As to the remainder of the inheritance, after disposing of other legacies, he instituted his father as his sole and universal heir. The question raised in the action was whether by virtue of said will the widow was entitled to receive only the legacy or whether, in addition to the legacy, she was also entitled to the legal portion in usufruct which, as surviving spouse, corresponded to her. The judgment says that from the testamentary provision under which the testator made the legacy in favor of his widow it was inferred that the testator felt worried with the possibility that she would remarry, and hence he made the validity of his legacy depend on the fact that such a marriage would not take effect; and that if the testator, in order that his wife could have the benefit of the legacy, limited her freedom in such a significant and transcendental manner, not only in the sense of her affection but also in the sense of possible material conveniences, a condition which deprived her of the possibility of enhancing her economic situation by another marriage, it was more logical to presume that he wanted to grant the legacy with full freedom, and that his widow should obtain it without any

limitation whatsoever, rather than attributing to him the intention of limiting it by charging it to the legal portion, for if that had been the will of the testator, in view of the condition to which he subordinated the effectiveness of the legacy, it was natural that he should have stated it expressly.

In this judgment it is sustained that it cannot be inferred that what is bequeathed by the testator as a legacy in favor of a forced heir shall be computed *always* to his legal portion, citing the judgment of February 21, 1900. It is concluded that whenever the will of the testator has not been clearly expressed to the contrary, § 815 [§ 743 ours] it does not preclude that the legacies voluntarily left be added to the inheritance by force of law, and said doctrine was applied in that case in view of the facts and circumstances thereof.[5]

■ There is nothing in the will in this case which assimilates the situation of facts in the preceding judgment and which calls for identical conclusion.[6] On the contrary, the widow herself and the other heirs interpreted the will as we have concluded, as established in the twenty-sixth clause of the partition deed previously copied. Section 1011 (1930 ed.) provides that should the testator not have made any division, nor entrusted this power to another, *if the heirs should be of age and should have the free administration of their property, they may distribute the estate in the manner they may see fit.* See § 604, Code of Civil Procedure, 1933 ed.

■ Since the testator did not violate at law the rights of the surviving spouse either by omission or by decreasing her legal portion, it not being apparent, in the light of the circumstances and testamentary provisions, that his intention

---

[5] Judgment of June 3, 1947; Aranzadi, *Rep. Jurisp.* 903.

[6] In constituting the widow's legacies the testator stated that he did so in consideration of the help she gave him in the development and promotion of the capital which in its greater part was community property. Nevertheless, the record shows that of a total amount of $948,029.95 left as his estate only $298,329.19 were community property.

was to tax the other heirs' property with the usufruct in favor of his widow in addition to the legacy that he left to her in fee simple in excess of one half of the same, the heirs' property may not be taxed in this case with any usufructuary quota whatsoever. Therefore, the reserve of the widow's right of usufruct entered by the Registrar in the registration of said property is not proper.

■ The Registrar maintains as an afterthought that the acceptance, by the widow, of the partition is equivalent to the renunciation of her right of usufruct, and that the heirs have not paid inheritance tax on the value of such usufruct. We have already concluded as a question of law and as a question of the will of the testator that there was no usufruct in favor of the widow on the inheritance which corresponded to the nephews and nieces. The Secretary of the Treasury seemed to understand it in like manner and did not impose any tax on the basis of such renunciation of usufruct. Assuming that under such circumstances that is part of the Registrar's power to pass on the documents presented for registration, which here would go on the merits, the fact is that the Registrar has not denied the registration as it would be proper in case the inheritance tax receipt were not presented. On the contrary he recorded the property although subject to the expression of usufructuary reserve. The contention is of no consequence at the present time.

That part of the Registrar's note in which he states that he will record appellants' property "without prejudice to the right of usufructuary quota corresponding to the widow, Jovita Hernández" will be reversed and said reserve will be eliminated from the registration.